IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK05-45650 |
| | ) | CH. 7 |
| BRADLEY UHRICH, | ) | |
| | ) | |
| Debtor. | ) | |
| IN THE MATTER OF: | ) | CASE NO. BK05-45652 |
| | ) | CH. 7 |
| LISA TAPPAN, | ) | |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM

Hearing was held in Lincoln, Nebraska, on September 27, 2006, on Debtors' motions to avoid liens (Fil. #24 in Case No. BK05-45650 and Fil. #20 in Case No. BK05-45652) and resistances by Community Action Partnership of Mid-Nebraska (Fil. #25 in Case No. BK05-45650 and Fil. #21 in Case No. BK05-45652) and Minden Lumber & Concrete Co., Inc. (Fil. #26 in Case No. BK05-45650). William V. Steffens appeared for Debtors; Thomas J. Watson appeared for Community Action Partnership of Mid-Nebraska; and John T. Tarrell appeared for Minden Lumber & Concrete Co., Inc. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B) and (K).

Debtors seek to set aside judgment liens on their residence under 11 U.S.C. § 522(f)(1) as impairing their claims to homestead exemptions. As discussed below, Brad Uhrich is entitled to claim a homestead exemption in the jointly owned residence as the "head of family" and the motion to set aside the judgment liens of the Judgment Creditors as to Mr. Uhrich is granted. Lisa Tappan's motion, however, is denied. Even though her claim of a homestead exemption cannot now be directly challenged due to the lack of any resistance to her claim of exemptions, she cannot prove that she "would have been entitled" to a homestead exemption but for the judgement lien.

The issues involved in these Chapter 7 bankruptcy cases are intertwined and were therefore heard together. Debtors in each case are single individuals who jointly own a residence. Each filed a separate Chapter 7 bankruptcy case on October 14, 2005. When they purchased the house in 2003, they both resided there with two minor children. Both Debtors are the parents of one of the children, while the other child is Ms. Tappan's niece. By the petition date, neither child was a dependent of either Debtor.

Prior to each bankruptcy filing, Mid-Nebraska Community Action, Inc., now known as Community Action Partnership of Mid-Nebraska, obtained a judgment in the amount of $12,447.67 plus interest against both Debtors. The judgment was transcribed in the District Court of Adams County, Nebraska. Also prior to the bankruptcy filings, Minden Lumber & Concrete Company

obtained a judgment against Mr. Uhrich in the amount of $958.83 plus interest. That judgment was also transcribed in the District Court of Adams County, Nebraska. These two creditors are hereafter referred to collectively as the "Judgment Creditors."

In their bankruptcy schedules, Debtors each claimed a homestead exemption of $12,500.00 in the joint residence. No objections to the exemptions were filed. Discharges were entered and the cases were closed in March 2006. In July 2006, Debtors moved to reopen the cases to set aside the Judgment Creditors' liens under 11 U.S.C. § 522(f)(1) because they impair Debtors' homestead exemptions. The Judgment Creditors resisted the motions and hearing was held on September 6, 2006. The cases were reopened because the Bankruptcy Code permits the reopening of a closed case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). It is within the Bankruptcy Court's discretion to base its decision to reopen on the particular circumstances and equities of each particular case. *Apex Oil Co. v. Sparks (In re Apex Oil Co.)*, 406 F.3d 538, 542 (8th Cir. 2005).

Subsequent hearing was then held on the motions to avoid liens, and the parties submitted evidence and supplemental written argument. One argument of the Debtors is that they scheduled each Judgment Creditor as unsecured, and such creditors did not dispute their unsecured status. Such argument is without merit. It is not incumbent upon the creditors to ensure that debtors properly schedule their debt in a no-asset case. Simply scheduling a secured debt as unsecured does not by itself change the status of the claim.

Section 522(f)(1) of the Bankruptcy Code permits a debtor to avoid a judicial lien on the debtor's interest in property "to the extent that such lien impairs an exemption to which the debtor would have been entitled[.]" Congress, through Section 522(f), made a policy decision that a judgment creditor's interest is less important than the debtor's interest, and less important than most other lienholders' interests:

> [Section 522(f)] was enacted to permit the avoidance of judicial liens that can interfere with the debtor's post-petition fresh start. This selective avoidance gives an advantage under federal law to secured creditors holding consensual liens, typically, residential mortgage lenders. But Congress intended to treat consensual lienholders more favorably, because their contractual relationships with the bankruptcy debtor typically allow the debtor to acquire equity in the exempt property by making post-petition mortgage payments.

*Kolich v. Antioch Laurel Veterinary Hosp. (In re Kolich)*, 328 F.3d 406, 410 (8th Cir. 2003).

The Judgment Creditors' primary argument against avoidance of the liens concerns each Debtor's claim to the homestead exemption. The Judgment Creditors also question Debtors' valuation of the property.

It is undisputed that the Judgment Creditors did not file objections to Debtors' claimed exemptions. The deadline for filing such objections was the later of 30 days after the conclusion of

the Section 341 meeting or 30 days after amended schedules were filed. Fed. R. Bankr. P. 4003(b). The onus is on creditors, and the 30-day deadline is strictly enforced; if objections are not timely filed, the property is deemed exempt, even if the exemption was improperly claimed. *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992); *First Nat'l Bank of St. Peter v. Peterson (In re Peterson)*, 929 F.2d 385 (8th Cir. 1991) (secured creditor failed to object to exemptions within 30 days after it received actual notice of amended exemptions, so its objection was struck as untimely); *In re Banke*, 268 B.R. 541, 542 (Bankr. N.D. Iowa 2001) ("Courts are not authorized to disregard clear procedural rules simply to reach the merits or out of concern for fairness in an individual case."); *In re Karrer*, 183 B.R. 177 (Bankr. N.D. Iowa 1994) (creditor did not timely object, so exemption stands and creditor cannot subsequently contest its validity, regardless of its statutory merit); *In re Knox*, 169 B.R. 62 (Bankr. D. Neb. 1994) (same).

If the Judgment Creditors were simply challenging Debtors' claimed exemptions at this late date, then Debtors would be correct that the exemptions are established and the exempted interests are no longer property of the estate and, therefore, not subject to dispute now. However, Debtors have moved to avoid the Judgment Creditors' liens, which shifts the burden of proof to themselves. "As the movant, the debtor bears the burden of proving by a preponderance of the evidence all the elements required to establish his entitlement to lien avoidance" under Section 522(f). *Soost v. NAH Inc. (In re Soost)*, 262 B.R. 68, 74 (B.A.P. 8th Cir. 2001) (acknowledging, but not taking a position on, a split of authority regarding whether an exemption established by default due to lack of a timely objection may be substantively challenged by a judicial lien creditor in response to a Section 522(f) motion); *Meseraull v. Rick Miller Constr., Inc.*, 1996 WL 185736 (8th Cir. Apr. 19, 1996); *In re Henke*, 294 B.R. 105, 108 (Bankr. D.N.D. 2003); *In re Streeper*, 158 B.R. 783, 786 (Bankr. N.D. Iowa 1993); *In re Indvik*, 118 B.R. 993, 1005-06 (Bankr. N.D. Iowa 1990).

The *Streeper* court pointed out that exemption claims and lien avoidances are separate matters governed by different statutory sections and legal standards. Under Section 522(f), the Court must ask whether the lien impairs an exemption to which Debtors "would have been entitled" under Section 522(b) but for the lien itself. 158 B.R. at 786 (*citing Owen v. Owen*, 500 U.S. 305 (1991)). The *Owen* case approved the two-step process of applying Section 522(f) to exemptions: ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien. 500 U.S. at 312-13. This approach follows the statutory language of Section 522(f). It does not assume that a claimed exemption is a valid exemption; rather, it requires Debtors to prove they are actually entitled to the exemption and that the judicial liens impair that exemption.

In *Meseraull*, the debtor claimed her homestead as exempt. No one objected. She then moved to avoid the judicial lien of a contractor who had worked on the house. The Eighth Circuit affirmed the lower courts' rulings that the lien creditor had missed its opportunity to object to the exemption and could not now do so in the context of the lien avoidance. However, since state law did not permit the exemption of homesteads encumbered by debt for work done on the house, the debtor was unable to prove her entitlement to the exemption and the lien was not avoidable.

Mr. Uhrich and Ms. Tappan face a similar situation here. They may avoid a lien under Section 522(f) only on property, or an interest in property, which would otherwise be exempt. That element of Section 522(f) permits the Judgment Creditors to revisit the issue of the homestead exemption.

The Nebraska Supreme Court has made clear that the purpose of the homestead exemption is "the preservation of the family." *Landon v. Pettijohn*, 231 Neb. 837, 843, 438 N.W.2d 757, 761 (1989) (*citing Bowker v. Collins*, 4 Neb. 494 (1876)). Accordingly, "the homestead law should be liberally construed in favor of those for whose benefit it was enacted." *Landon*, 231 Neb. at 843 (*quoting Horn v. Gates*, 155 Neb. 667, 671, 53 N.W.2d 84, 86 (1952)).

The same principle has been applied in the Bankruptcy Court to permit married couples, with or without dependents, and single persons with dependents to claim a homestead exemption. *See In re Roberts*, 211 B.R. 696 (Bankr. D. Neb. 1997) and 215 B.R. 197 (Bankr. D. Neb. 1997), *aff'd*, 219 B.R. 235 (B.A.P. 8th Cir. 1998); *In re Roush*, 215 B.R. 592, 594-95 (Bankr. D. Neb. 1997) (holding that unmarried debtors who each qualify as heads of family are each entitled to a separate homestead exemption in his or her interest in jointly held property); Neb. Rev. Stat. §§ 40-102[1] and -115. The appellate decision in *Roberts* makes clear that "[t]he category of individuals entitled to claim a homestead exemption * * * includes married persons, irrespective of the status as 'head of a family'." 219 B.R. at 238. "Only if [a] claimant is not married does one need to refer to the definition of 'head of household' in [Section] 40-115 to determine if the claimant qualifies for the exemption." *Id.*

Since Debtors were not married at the time of their respective bankruptcy filings, the threshold question is whether each was a "head of family." Neb. Rev. Stat. § 40-115 defines "head of family" as follows:

> The phrase head of a family, as used in sections 40-101 to 40-116, includes within its meanings every person who has residing on the premises with him or her and under his or her care and maintenance:
> (1) His or her minor child or the minor child of his or her deceased wife or husband;
> (2) A minor brother or sister or the minor child of a deceased brother or sister;
> (3) A father, mother, grandfather, or grandmother;

---

[1] Section 40-102. Homestead; selection, property available for.
If the claimant be married, the homestead may be selected from the separate property of the husband, or with the consent of the wife from her separate property. When the claimant is not married, but is the head of a family within the meaning of section 40-115, the homestead may be selected from any of his or her property.

>    (4) The father, mother, grandfather, or grandmother of a deceased husband or wife;
>    (5) An unmarried sister, brother, or any other of the relatives mentioned in this section who have attained the age of majority and are unable to take care of or support themselves; or
>    (6) A surviving spouse who resides in property which would have qualified for a homestead exemption if the deceased spouse were still alive and married to the surviving spouse.

The case of *Palmer v. Sawyer*, 74 Neb. 108, 103 N.W. 1088 (1905), in holding that a widower retained homestead rights in the property even though his children had grown up and moved away at the time a judgment was entered against him, stands for the proposition that once a property becomes a homestead, it retains that characterization until the property is sold or abandoned. The *Palmer* court observed:

> In *Galligher [sic] v. Smiley*, 28 Neb. 189, Reese, C. J., in rendering the opinion, said: "In its inception a homestead is a parcel of land on which the family resides, and which is to them a home. It is constituted by the two acts of selection and residence, in compliance with the terms of the law conferring it. When these things exist bona fide, the essential elements of the homestead right exist, of which the persons entitled to it cannot be divested by acts or influences beyond their volition."

103 N.W. at 1090.

The *Palmer* case dealt with a homestead created by a widower who had three minor children living with him when he acquired and moved upon the subject premises. Subsequently, one of the minor children died and the others attained their majority and left home, leaving the father alone in possession and occupancy of the premises. Notwithstanding the fact that no dependents lived with him at the time the judgment attached, the Nebraska Supreme Court determined that he was the "head of the family" within the meaning of the homestead statutes. *Id.* at 1089. The Nebraska court concluded that "when a homestead is once acquired, the right to the continuous enjoyment of it can only be defeated by the voluntary act of the claimant." *Id.* at 1091. Therefore, *Palmer* stands for the proposition that as long as the homestead claimant continues to reside there, the homestead character of the property continues in the claimant even though he/she may subsequently have no children or other dependents residing with him/her.

In the bankruptcy context, the focus is on the debtor's status as of the petition date. *See* 11 U.S.C. § 522(b)(2)(A) (a debtor may exempt "any property that is exempt under * * * State or local law that is applicable on the date of the filing of the petition * * *."); *Peoples' State Bank v. Stenzel (In re Stenzel)*, 301 F.3d 945, 947 (8th Cir. 2002) ("A debtor may exempt from his bankruptcy estate property that is exempt under state law on the date the petition is filed."); *In re Murphy*, 292 B.R. 403, 408-09 (Bankr. D.N.D. 2003) ("A debtor's exemptions are determined as of the time of the bankruptcy petition filing * * *. Accordingly, courts focus only on the law and facts as they exist on the date of filing the petition.").

In the present cases, neither Debtor claimed any dependents on the petition date. However, at the time they acquired the property prior to the petition date, both Debtors resided in the home with their minor child. According to *Palmer*, the head of family does not lose the homestead status, once established, simply because the child has grown and moved away. At the time of bankruptcy filing, the head of family retained the homestead status of the property.

Both Debtors are now claiming to have had head of family status with respect to their joint child. In *Landon v. Pettijohn*, 231 Neb. at 841, 438. N.W.2d at 760, the Nebraska Supreme Court stated that "it is legally impossible to have two persons qualify as the 'head of the family' because then each person could raise a claim of homestead in the same parcel of property." The Court further stated that "we note that two separate homesteads cannot exist in the same parcel of land." *Id.* Thus, only one person can claim to be the head of the same family for purposes of claiming a homestead exemption in the subject property.[2]

The next question is who, as between Brad Uhrich and Lisa Tappan, is the "head of family" for homestead exemption purposes. According to the schedules filed by each Debtor, Lisa Tappan did not have any income at the time of the bankruptcy filing. Brad Uhrich did have income and, therefore, the Court will assume that Mr. Uhrich provided the support for the family. Accordingly, he is entitled to claim a homestead exemption in his interest in the subject property as the head of family.

The inquiry does not end there, however. As indicated, another minor child lived in the home for a period of time before reaching the age of majority--the niece of Ms. Tappan. Section 40-115 specifies the types of dependents who may entitle a person to claim head of family status. The only dependent listed which could be applicable to Ms. Tappan's niece is subparagraph (2), which refers to a "minor child of a deceased brother or sister * * *." Unfortunately, there is no evidence in the record as to whether the niece living with Ms. Tappan was the minor child of a deceased brother or sister. Absent such evidence, the Court cannot find head of family status for Ms. Tappan as a result of her niece being a dependent. Further, as indicated previously, *Landon v. Pettijohn* provides that two separate homesteads cannot exist in the same parcel of land.

Having established that Mr. Uhrich is entitled to a homestead exemption, the discussion now moves to whether and to what extent that exemption is impaired by the Judgment Creditors' liens. For purposes of determining whether a lien should be avoided, Section 522(f)(2)(A) "provides

---

[2]The Court recognizes that the Honorable John C. Minahan in *In re Roush*, 215 B.R. 592, 594-95 (Bankr. D. Neb. 1997), found that single, unmarried individuals with dependent children can each claim a homestead exemption in their respective interests in jointly owned property. While the underlying facts in *Roush* are not entirely clear, it appears that each of the homestead claimants had his or her own children and that there were two separate families living in the jointly owned home. Since the present cases do not involve two separate families, *Roush* is distinguishable and the Court will leave for another day whether *Roush* can be reconciled with Nebraska Supreme Court decisions such as *Landon v. Pettijohn*.

a simple arithmetic test to determine the extent to which a lien impairs an exemption of specific property. The exemption is impaired to the extent the total of all liens on the property plus the exemption exceed the fair market value of the property." *In re Gostian*, 215 B.R. 237, 238 (Bankr. M.D. Ala. 1997), *quoted in Kolich v. Antioch Laurel Veterinary Hosp., Inc.*, 273 B.R. 199, 202 (B.A.P. 8th Cir. 2002).

If the total of the liens against the property and the debtor's exemption in the property is less than the debtor's interest in the property absent any liens, then the lien does not impair the exemption and cannot be avoided. If the total of the liens and the exemption exceeds the debtor's interest absent liens, then the lien impairs the exemption and is avoided by the amount of the difference. If the amount of the difference exceeds the amount of the lien, then the lien is avoided in full. *See In re Holt*, Neb. Bkr. 97:233 (Bankr. D. Neb. 1997). *See also Soost*, 262 B.R. at 74 (where lien need not be avoided in its entirety to alleviate impairment of an exemption, it may be avoided only in part and only to extent of impairment).

The analysis begins with the value of the property as of the petition date. *In re Hall*, 327 B.R. 424, 427-28 (Bankr. W.D. Mo. 2005). The only evidence as to the value of the home at the time of the bankruptcy filing is set forth in the schedules and in Debtors' affidavits (Fil. #28 Uhrich, Case No. BK05-45650 and Fil. #23 Tappan, Case No. BK06-45652). According to the affidavits, the assessed value of the jointly owned home for the 2005 tax year was $46,180.00. Each Debtor listed $23,090.00 as the value of their undivided one-half interest in the property. The affidavits further indicate that the home was subject to a lien in favor of the Bank of Doniphan at the time of filing in the amount of approximately $40,000.00. Accordingly, the combined equity in the home was approximately $6,180.00, and Mr. Uhrich's interest in that equity would be $3,090.00

According to the Eighth Circuit Court of Appeals in *Kolich*, the Court's duty is to apply Section 522(f)(2)(A) as Congress wrote it. 328 F.3d at 410. When the numbers in this case are plugged into the mathematical formula of Section 522(f)(2)(A), it becomes clear that the liens plus the exemption exceed the value of the property, and both liens must be avoided in full.

| | |
|---|---:|
| (i) CAP Mid-Nebraska's lien: | $12,447.67 |
| (i) Minden Lumber & Concrete's lien: | $958.83 |
| (ii) All other liens:<br>    Approximate amount of Bank of Doniphan's lien[3] | $20,000.00 |
| (iii) Amount of exemption that Debtor could claim absent any liens: | $12,500.00 |
| Sum of liens and exemption: | $45,906.50 |

---

[3]For purposes of this calculation, the mortgage debt is apportioned equally between the Debtors to reflect the one-half ownership interest claimed by each.

| | |
|---|---:|
| Less value of Debtor's interest absent any liens: | $23,090.00 |
| Extent of impairment: | $22,816.50 |

For these reasons, the Judgment Creditors' liens impair the homestead exemption of Mr. Uhrich and the motion to avoid those liens will be granted. A separate order will be entered.

DATED: November 14, 2006.

BY THE COURT:

/s/ Thomas L. Saladino
United States Bankruptcy Judge

Notice given by the Court to:
  *William V. Steffens
  Thomas J. Watson
  John T. Tarrell
  John A. Wolf
  United States Trustee

Movant(*) is responsible for giving notice to other parties if required by rule or statute.